# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DAMEN R. LOWE,**

              **Petitioner,**

     **v.**                       **Case No. 15-CV-425**

**WILLIAM POLLARD,[1]**

              **Respondent.**

---

# RECOMMENDATION

---

## Background

Damen Lowe, then both a Racine police officer and school security officer, physically and sexually assaulted his adopted daughter, V.A.L. Lowe was very strict with V.A.L. *State v. Lowe*, 2013 WI App 128, ¶ 3, 351 Wis. 2d 224, 838 N.W.2d 865. He restricted her cell phone and social media usage and allowed her to socialize with only certain boys. *Id.* Lowe was able to keep close tabs on V.A.L. because he worked as a security guard at his daughter's high school. *Id.*

---

[1] Lowe is incarcerated at Dodge Correctional Institution. (ECF No. 1.) The warden of this institution is William Pollard, https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/DodgeCorrectional Institution.aspx (last visited May 17, 2018). Therefore, in accordance with Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the caption is updated accordingly.

In April of 2009 Lowe learned his daughter was failing history and that she had been using a classmate's cell phone to send text messages. *Id.*, ¶ 4. Lowe took his daughter out of class, brought her to the teachers' lounge, forced her to the ground, handcuffed her, and demanded to know who she had been texting. *Id.* (ECF No. 10-10 at 219.) She refused to tell him. (ECF No. 10-10 at 218.) Lowe then escorted V.A.L. out of the teacher's lounge, through the school, and out to his car in order to take her home, keeping her handcuffed the whole time and threatening to punch her in the face if she continued to ask that he loosen the handcuffs. (ECF No. 10-10 at 224, 229.) Later that evening, at home, V.A.L. reported that Lowe struck her twice on her leg with an open hand and hit her with a belt on her arm and thigh. *Lowe*, 2013 WI App 128, ¶ 3.

V.A.L. made plans to run away, and the following day told a friend that Lowe had been sexually abusing her. *Id.*, ¶ 5. V.A.L. called Child Protective Services (CPS) and reported physical, but not sexual, abuse. *Id.* That same day she also spoke with detectives and again did not report sexual abuse. *Id.* It was not until days later that V.A.L. reported to CPS that Lowe had been sexually assaulting her. *Id.*, ¶ 6.

According to V.A.L., the sexual abuse began with Lowe showing her pornography when she was in fifth grade. (ECF No. 10-11 at 46-51.) Lowe began having sexual contact with V.A.L. when she was in sixth grade. (ECF No. 10-11 at 51.) Lowe would require her to engage in sexual acts in exchange for privileges. (ECF No. 10-11 at 65-66.) This included, for example, instances where she wanted to go out with friends

(ECF No. 10-11 at 66), permission to get her tongue pierced (ECF No. 10-11 at 67), and one instance where Lowe had V.A.L. masturbate him in exchange for letting her listen to a CD in the car (ECF No. 10-11 at 86).

Lowe was arrested on May 4, 2009 and charged with repeated sexual assault of a child, incest, four counts of exposing a child to harmful material, and one count of child abuse. (ECF Nos. 10-1; 10-13 at 199.) Shortly after V.A.L. first made her allegations against Lowe, her mother informed her that Lowe was not actually her biological father; Lowe had adopted V.A.L. (ECF No. 10-10 at 210-12.) Lowe proceeded to trial, where his defense was that V.A.L. fabricated the sexual abuse as a means to escape Lowe's strict supervision and discipline. Following a six-day jury trial, Lowe was found guilty. He was acquitted of three additional charges of child abuse.

After unsuccessfully appealing his conviction, Lowe turned to federal court with a petition for a writ of habeas corpus. (ECF No. 1.) The matter is fully briefed, and the Honorable Pamela Pepper recently referred the matter to this court for a recommendation as to the resolution of the petition. (ECF No. 17.)

## Standard of Review

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court generally may grant

habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)).

## Analysis

### Right to Present a Defense

As stated above, Lowe's theory of defense was that V.A.L. lied about the sexual abuse to escape Lowe's strict discipline and parenting. To support this defense, Lowe sought to admit two types of evidence. First, Lowe sought to admit printouts from V.A.L.'s MySpace page on various dates between May 31, 2009 and December 14, 2009—after she made the sexual assault allegations against Lowe. The MySpace pages showed V.A.L. engaging in behavior that Lowe had prohibited. Second, Lowe sought to admit reports from the Racine Police Department indicating that V.A.L.'s mother called police about V.A.L. from May 18, 2009 through January 2, 2010—again, after V.A.L. made the sexual assault allegations against Lowe. Lowe claimed that the police reports showed V.A.L.'s mother's disapproval of V.A.L.'s behavior.

The trial court allowed the defense to offer evidence of V.A.L.'s misbehavior and conflict between V.A.L. and Lowe that predated V.A.L.'s allegations of sexual assault. In addition, the trial court permitted defense counsel to ask V.A.L. generally about her

MySpace account and activities she engaged in after Lowe's arrest of which he had previously disapproved. However, the trial court precluded Lowe from introducing V.A.L.'s MySpace posts that Lowe's trial counsel characterized as "a summer goal list," which included her desire to "[g]et my lounge [sic] and lip pierced, freak in the back seat of a car … spend the night at a boy's house, get hella' mushhhed and/or wasted." (ECF No. 10-11 at 118.) Lowe sought to introduce MySpace posts "which would indicate alcohol and drug consumption," (ECF No. 10-11 at 123), specifically a photograph of "[h]er laying on a bed with a guy holding a bottle of alcohol …" and "two photographs of her purporting to smoke out of a bottle." (ECF No. 10-11 at 125.) Finally, Lowe was precluded from introducing the post, "This summer is going to be one I'll never forget." (ECF No. 10-11 at 117.) Additionally, the trial court excluded evidence of calls V.A.L.'s mother made to the police following Lowe's arrest about problems she was having with V.A.L. (ECF No. 10-2 at 108-22.)

The Wisconsin Court of Appeals found that Lowe "was able to fully explore V.A.L.'s pre-allegation behavior, including intense conflict with Lowe." *Lowe*, 2013 WI App 128, ¶ 18. The trial court limited inquiries only into V.A.L.'s behavior after she accused Lowe because of concerns "the content was irrelevant and that trial counsel was trying to 'trash the victim.'" *Lowe*, 2013 WI App 128, ¶ 15. But even in this regard,

> the trial court did not make a blanket preclusion of evidence of V.A.L.'s post-allegation behavior. Trial counsel was permitted to support the defense theory by asking V.A.L. whether she resumed using MySpace in a manner that her father prohibited, whether she was behaving in ways of

which her father would not approve, and whether she was contacting people he would have forbidden her to contact. Trial counsel elicited V.A.L.'s testimony that she was able to resume use of her cell phone.

*Id.*, ¶ 19.

Lowe argues that his constitutional right to cross-examine witnesses and present a complete defense was violated when he was not allowed to present V.A.L's MySpace posts or the reports of the Racine Police Department at trial. Lowe contends this "resulted in both V.A.L. and her mother testifying falsely under the protections of the court's ruling." (ECF No. 3 at 10.) Lowe wanted to be able to ask V.A.L. why she "was able to run away, break curfew, cause disturbances, and drink without being arrested or cited, why the police were called five times for this behavior and yet never referred her to juvenile authorities, some of which occurred while the Lowe's case was pending." (ECF No. 3 at 11.)

Lowe argues that the evidence was important because, without it, V.A.L.'s assertion that she was not "seeing boys her father disapproved, or acting in ways that her father disapproved, and that she was simply a typical teenager went unchallenged before the jury due to the court's ruling." (ECF No. 3 at 11.) V.A.L.'s mother likewise testified, untruthfully according to Lowe, that "V.A.L. is a 'typical' and 'decent normal teenager,' not 'defiant' or 'disgruntled.'" (ECF No. 3 at 11.) Lowe argues that the court's error was not harmless because the case came down to "a credibility contest between V.A.L. and Lowe." (ECF No. 3 at 12.)

The details of Lowe's argument regarding the police reports are not well-developed in Lowe's petition, brief, or reply. Likewise, the court of appeals did not appear to specifically address the issue other than to note that a new argument Lowe made for the first time on appeal in support of the admission of the reports was waived by his failure to present it at the trial court. *Lowe*, 2013 WI App 128, ¶ 28.

A defendant's Sixth Amendment guarantee "to be confronted with the witnesses against him" "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). It includes the right to cross-examine those witnesses and to test "the believability of a witness and the truth of his testimony." *Id.* at 316. This may include an "attack on the witness' credibility … effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* Moreover, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324, (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

"It's well established, however, that the constitutional rights to cross-examine witnesses and present relevant testimony are not absolute; these rights 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial

process.'" *Sarfraz v. Smith*, 885 F.3d 1029, 1037 (7th Cir. 2018) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). Therefore, trial judges may "exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Sarfraz*, 885 F.3d at 1037 (quoting *Holmes*, 547 U.S. at 326). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "But restrictions on a criminal defendant's right to cross-examine adverse witnesses and present evidence in his own defense 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Sarfraz*, 885 F.3d at 1037 (quoting *Michigan v. Lucas*, 500 U.S. 145, 151 (1991)).

Having reviewed the record, the court finds that the court of appeals' conclusion was a reasonable application of federal law as determined by the United States Supreme Court. The court agrees that most probative of V.A.L.'s motive to fabricate her allegations was what occurred before she first accused Lowe of sexually assaulting her. Nothing in the record suggests that the court limited the scope of Lowe's cross-examination of V.A.L. regarding her relationship with Lowe before she first accused him of having sexually assaulted her. As a result, Lowe was able to make it clear to the jury that the relationship he had with V.A.L. was extremely contentious and that V.A.L.

repeatedly disobeyed Lowe in a variety of ways, often involving her use of cell phones, MySpace, or her interactions with boys. (*See, e.g.*, ECF No. 10-11 at 186, 209, 212, 213-14, 239, 245.) Lowe also demonstrated that V.A.L. was willing to lie in an attempt to avoid getting into trouble. (ECF No. 10-11 at 176-77.)

While events occurring after Lowe's arrest for sexually abusing V.A.L. obviously could not have motivated V.A.L. to accuse Lowe in the first place, the court accepts that subsequent events had some relevance to V.A.L.'s motive to continue to accuse Lowe and testify against him. If V.A.L.'s mother, with whom she went to live following Lowe's arrest, had turned out to be just as strict as Lowe, that fact arguably would undermine Lowe's argument that V.A.L.'s testimony was motivated by a desire to evade strict parenting. Conversely, if V.A.L.'s scheme "worked" and she enjoyed greater freedom after Lowe was arrested, engaging in conduct that Lowe never would have tolerated, that would tend to suggest a motive for her continued accusations.

But the relevance of this post-arrest evidence was marginal at best. Significantly undermining Lowe's defense that V.A.L. fabricated her allegations in order to escape Lowe's parenting was Lowe's own testimony. He testified that on the very night following the incident at the school, right after he hit her, he told V.A.L. to go live with her mother. (ECF No. 10-13 at 149-50.) V.A.L. refused. (ECF No. 10-13 at 150.) Accepting Lowe's testimony as true, if V.A.L. really was desperate to diminish Lowe's scrutiny of

her life, she could have simply left to go live with her mother and did not need to resort to the extreme measure of fabricating a long history of sexual assaults.

And the risk of confusing the issues or misleading the jury was significant. The central issue at trial was whether V.A.L. was telling the truth as to whether Lowe had physically and sexually assaulted her. To balance Lowe's desire to introduce evidence of V.A.L.'s motive to fabricate against concerns of introducing confusing and marginally relevant evidence that simply "trashed the victim," the trial court reasonably and appropriately limited the scope of the evidence. The point was made clear to the jury that, from Lowe's perspective, V.A.L. regularly misbehaved and wanted to do much more than Lowe permitted. Upon going to live with her mother, she was afforded significantly more freedom and engaged in behavior that Lowe never would have tolerated. Thus, Lowe's attorney asked V.A.L., referring to the period after Lowe's arrest, "And you'd agree with me … [y]ou have used that MySpace page in a manner that your father would have severely objected to." (ECF No. 10-11 at 261.) V.A.L. agreed. (ECF No. 10-11 at 261.) All that was kept from the jury were the details of what specifically was posted on her MySpace page.

As for the police reports, the trial court reasonably concluded that admission of the details of V.A.L.'s subsequent misbehavior ran an undue risk of painting V.A.L. as a promiscuous and delinquent teenager, improperly implying that she should not be believed because of her character. Moreover, the police reports actually undermine the

central theme of Lowe's defense—that V.A.L. lied because she wanted to go live with her mother, who gave her the freedom she sought. The police reports demonstrate that V.A.L.'s mother did not give V.A.L. free rein to do whatever she wanted, and that she would call the police when V.A.L. acted up. When the risks of inappropriately impugning the character of the victim and confusing the jury as to what is really at issue are balanced against the minimally probative value of the additional details, the court finds that it was wholly reasonable for the trial court to limit the evidence as it did.

In sum, Lowe has failed to show that the Wisconsin Court of Appeals' decision on this issue was contrary to or involved an unreasonable applicable of clearly established federal law.

**Ineffective Assistance of Counsel**

Lowe contends that his trial counsel was ineffective in several respects. First, he "performed deficiently by not complying with the State's discovery demand, which played an indirect role in the court's decision to limit the admissibility of the MySpace and other documents at trial." (ECF No. 3 at 15.) The "other documents" are "police department call log records, which he sought to use at trial to demonstrate that [V.A.L.'s mother] called the police on her daughter numerous times," "several of V.A.L.'s letters which were material to the defense," one of which "discussed 'meeting up' with a boy after her dad left for work, … another was the runaway letter left in her locker on

Friday, April 30, 2009 …, and the third was a handwritten note between V.A.L. and a friend writing about a boy she was not to have contact with, his legal troubles, and wanting to have sex," and finally "a transcript of V.A.L.'s [CPS] interview from May 4, 2009." (ECF No. 3 at 16-17.)

Lowe argues that his trial counsel also "performed deficiently by failing to diligently and timely prepare and file a brief in support of admitting the above-mentioned MySpace and other documents at trial." (ECF No. 3 at 17.) Next, he alleges that trial counsel "deficiently performed by failing to fully investigate Lowe's case—specifically, by failing to obtain Lowe's ex-wife's phone records for use at trial." (ECF No. 3 at 18.) "Finally, a reasonable attorney would have called Lowe's live-in girlfriend, Crystal Cruz, to support his defense at trial." (ECF No. 3 at 19.)

To prevail on a claim of ineffective assistance of counsel a petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Perrone v. United States*, No. 16-2437, 2018 U.S. App. LEXIS 12465, at *22 (7th Cir. May 14, 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "On the performance prong, he 'must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (internal quotation marks omitted)). "On the prejudice prong, he must show that 'but for counsel's errors, there is a reasonable probability that the result would have been different.'" *Id.* (quoting *United States v. Graf*,

827 F.3d 581, 584 (7th Cir. 2016)). "As with the first prong, there is a presumption that the petitioner has not suffered prejudice." *Id.* (citing *Graf*, 827 F.3d at 584-85). Thus, the court's review of an ineffective assistance of counsel claim is "doubly deferential" when presented in a petition for a writ of habeas corpus. *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018) (quoting *Hinesley v. Knight*, 837 F.3d 721, 732 (7th Cir. 2016)).

The court concludes that the court of appeals reasonably determined that Lowe failed to show he was denied the effective assistance of counsel at trial.

With regard to the allegation that Lowe's trial counsel performed deficiently by not complying with the State's discovery demand, which allegedly played an "indirect" role in the court's decision to limit the admissibility of V.A.L.'s MySpace account and other documents at trial, the court of appeals noted that the trial court excluded the MySpace pages and police records for reasons independent of counsel's alleged failure to comply with the state's discovery demands. *Lowe*, 2013 WI App 128, ¶¶ 34-35. Lowe has not established that any non-compliance actually affected the trial court's decision. Consequently, any allegedly unreasonable conduct necessarily was not prejudicial. There likewise was no prejudice with respect to V.A.L.'s letters or the transcript of V.A.L.'s interview. Notwithstanding any allegedly unreasonable conduct by Lowe's attorney, the letters were admitted to the extent sought by Lowe, and counsel was permitted to use the transcript while cross-examining V.A.L. *Lowe*, 2013 WI App 128, ¶¶ 36-37.

As for Lowe's argument regarding counsel's late pretrial brief, the court of appeals found that the argument was a "bare-bones allegation [that] falls short of showing deficiency or prejudice." *Lowe*, 2013 WI App 128, ¶ 38. The basis for Lowe's claim is no clearer to this court. Based upon Lowe's limited discussion of this claim, it appears that he may be arguing that, if his attorney would have submitted a timely brief, the trial court would have admitted the "MySpace and other documents at trial." (ECF No. 3 at 17.) But, as discussed above, the evidence was excluded for reasons independent of counsel's tardiness. Ultimately, the court finds no reason to conclude that Lowe is entitled to relief on this claim.

Lowe argues that trial counsel should have obtained V.A.L.'s mother's phone records because the "timeline" of V.A.L.'s mother's calls supports the defense theory surrounding the events leading up to V.A.L.'s decision to report Lowe for sexual abuse. (ECF No. 3 at 18-19.) In rejecting Lowe's argument regarding the phone records, the court of appeals stated:

> The phone records only show the times of calls, not the content. Given the minimal probative value of a list of which numbers were called when, we conclude that trial counsel's failure to obtain them was not deficient and did not prejudice the defense. Moreover, Lowe did not call [V.A.L.'s mother] to testify at the postconviction hearing. Thus, he failed to show that cross-examination of [V.A.L.'s mother] with the phone records would have changed her testimony, much less the result of the trial.

*Lowe*, 2013 WI App 128, ¶ 39. The court agrees with this explanation and finds this conclusion was a reasonable application of *Strickland*.

Finally, counsel reasonably chose not to call Cruz, Lowe's girlfriend, as a witness. Among other things, Cruz purportedly would have testified as to some of the problems that existed between Lowe and V.A.L., as well as that she did not observe any marks or bruises on V.A.L. after one of the alleged physical assaults. (ECF No. 10-17 at 49-50.) But Cruz was 14 years younger than Lowe and, in the opinion of Lowe's trial counsel, "bore … a striking resemblance to [V.A.L.]," so much so that counsel misidentified the two in photographs (ECF No. 10-17 at 72-73). Also, Lowe was a police officer at the high school Cruz attended and there were allegations that their sexual relationship began while Cruz was still in high school. (ECF No. 10-17 at 72-73.) The two started publicly dating shortly after Cruz graduated. (ECF No. 10-17 at 72.) Thus, counsel reasonably concluded that calling Cruz to testify would have arguably supported the state's case by highlighting and corroborating Lowe's alleged sexual interest in high school age girls. The evidence Cruz stood to offer was of marginal relevance and the danger of calling her as a witness was significant. Counsel's decision was not unreasonable.

**Brady**

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Both exculpatory and impeachment evidence are "evidence favorable to an accused" under *Brady*. *Snow v. Pfister*, 880 F.3d 857, 867 (7th

Cir. 2018) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972)); *see also Socha v. Richardson*, 874 F.3d 983, 988 (7th Cir. 2017). A petitioner "is entitled to habeas corpus relief under *Brady* only if he can show three things: first, that the evidence at issue was favorable; second, that the evidence was suppressed; and third, that it was material to his defense." *Socha v. Richardson*, 874 F.3d 983, 987 (7th Cir. 2017) (citing *United States v. Walker*, 746 F.3d 300, 306 (7th Cir. 2014)). Evidence is "suppressed" if "(1) the prosecution failed to disclose the evidence before it was too late for the defendant to make use of the evidence, and … (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Socha v. Richardson*, 874 F.3d 983, 988 (7th Cir. 2017) (quoting *Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007)).

Lowe contends that "[t]he State did not tell the defense about V.A.L.'s unsubstantiated claim that she previously called the police to report her father's abuse and Lowe intercepted the police and turned them away." (ECF No. 3 at 23-24.) The state acknowledged learning of V.A.L.'s claim in the week before trial, investigating it, but not finding any information corroborating it. (ECF No. 10-11 at 104.) At trial, the state asserted "It's not exculpatory in nature … by any means, and it isn't something that is in the sole possession of the State. The Defendant was … the witness will testify the Defendant was there." (ECF No. 10-11 at 105.)

Lowe alleges that the fact that the state was unable to find a police report corroborating V.A.L.'s allegation was exculpatory. According to Lowe, the absence of a corroborating police report demonstrates that V.A.L.'s statement that she previously called the police to report her father's abuse was false. He contends that V.A.L.'s fabrication of this evidence "makes it more likely that she fabricated the sexual assault allegations." (ECF No. 3 at 24.)

It was amidst the state's direct examination of V.A.L. that the state disclosed its inability to confirm V.A.L.'s allegation about having previously called the police. (ECF No. 10-11 at 104.) It is certainly arguable that this admittedly last-minute disclosure still afforded Lowe adequate time to make use of the information. *See Moore v. Casperson*, 345 F.3d 474, 493 (7th Cir. 2003) (quoting *United States v. Allain*, 671 F.2d 248, 255 (7th Cir. 1982) ("[T]here 'is nothing in *Brady* … to require that such disclosures be made before trial' because 'as long as ultimate disclosure is made before it is too late for the defendant[] to make use of any benefits of the evidence, Due Process is satisfied.'"); *see also United States v. Barker*, 467 F.3d 625, 629 (7th Cir. 2006). If Lowe believed that the absence of a police report corroborating V.A.L.'s testimony was exculpatory or impeached her credibility, he would have been free to cross-examine V.A.L. about it. Instead, Lowe chose a different tact—to seek exclusion of the evidence. The court granted the defense request, precluding the state from asking V.A.L. about this prior

instance unless it could muster evidence to corroborate the allegation. (ECF No. 10-11 at 104-06.)

The court of appeals concluded that the anticipated testimony was "hardly exculpatory" and that Lowe "failed to take steps postconviction to sufficiently establish, one way or another, whether there had been any record of such a call." *Lowe*, 2013 WI App 128, ¶ 46. The court finds that the court of appeals' conclusion was a reasonable application of *Brady* and its progeny. Notably, the state did not check "computer-aided dispatch records"; it confirmed only that a police report was not generated as a result of the call. (ECF No. 10-11 at 104.) The court is offered no reason to conclude that, if Lowe turned the officers away, as V.A.L. alleged, a police report should have been produced. Thus, Lowe has failed to show that the absence of a police report undermines the veracity of V.A.L.'s allegation.

Moreover, as acknowledged by the court of appeals, Lowe "failed to take steps postconviction to sufficiently establish, one way or another, whether there had been any record of such a call," *Lowe*, 2013 WI App 128, ¶ 46, by, for example, investigating whether a computer-aided dispatch record existed. Thus, he has failed to demonstrate that the information was material to his defense in the sense that there was "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," *Boss v. Pierce*, 263 F.3d 734, 744 (7th Cir. 2001).

18

**Jury Unanimity**

Lowe contends that Wisconsin's Repeated Sexual Assault of a Child statute, Wis. Stat. § 948.025, "violates the jury unanimity provisions by stating the jury does not need to agree on the individual acts that comprise the three sexual assaults or if a particular violation was a sexual assault under § 948.02(1) or (2)."[2] (ECF No. 3 at 24-25.) The court of appeals noted that in *State v. Johnson*, 2001 WI 52, 243 Wis. 2d 365, 627 N.W.2d 455, the Wisconsin Supreme Court "squarely addressed and rejected this same challenge to § 948.025." *Lowe*, 2013 WI App 128, ¶ 47. Nevertheless, Lowe urges this court to agree with the dissenting opinion of Justice Ann Walsh Bradley in *Johnson* and find that § 948.025 "does not comport with due process requirements of fundamental fairness, abrogating the need to have jurors agree on whether the state has met its burden of proof for each predicate act comprising the greater offense." (ECF No. 3 at 25-26.)

The statute states: "If an action under sub. (1)(e) is tried to a jury, in order to find the defendant guilty the members of the jury must unanimously agree that at least 3 violations of s. 948.02 (1) or (2) occurred within the specified period of time but need not

---

[2] The court notes an apparent discrepancy on Lowe's judgment of conviction. The judgment of conviction states that Lowe was convicted of "Repeated Sex Assault of Same Child (At Least 3 Violations 1st Degree w/ Child under 13 & Harm," a violation of Wis. Stat. § 948.025(1)(a) and a Class C felony. (ECF No. 10-1 at 1.) The statutory reference matches the description of the offense contained in the judgment of conviction, but both appear to be incorrect. V.A.L. was under 13 for only about a month of the period covered in the "Date(s) Committed" portion of the judgment, between "July, 2006 and April 30, 2009." Moreover, a violation of Wis. Stat. § 948.025(1)(a) was never a Class C felony. Rather, based on the jury instructions, it appears Lowe was actually convicted of violating Wis. Stat. § 948.025(1)(e) (2007-2008). But this discrepancy does not appear material to Lowe's petition.

agree on which acts constitute the requisite number and need not agree on whether a particular violation was a violation of s. 948.02 (1) or (2)." Wis. Stat. § 948.025(2)(e).

The issue of jury unanimity with regard to whether any underlying offense was a violation of Wis. Stat. § 948.01(1) or § 948.02(2) is immaterial to Lowe's petition. The court instructed the jury only with respect to Wis. Stat. § 948.02(2) (second degree sexual assault of a child, proscribing "sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty"). (ECF No. 10-14 at 40.) However, the court did instruct the jury as follows: "Before you may find the defendant guilty, you must unanimously agree that at least three sexual assaults occurred between July, 2006, and April 30, 2009, but you need not agree on which acts constitute the required three -- required three." (ECF No. 10-14 at 41.) Thus, the only issue before the court is whether it is contrary to clearly established federal law to not require the jury to be unanimous as to which three violations of Wis. Stat. § 948.02(2) formed the basis for conviction under Wis. Stat. § 948.025(1)(e).

Lowe points to *Richardson v. United States*, 526 U.S. 813, 820 (1999), a case that involved the federal continuing criminal enterprise statute, 21 U.S.C. § 848(a). Although the Court held that, to be convicted under the continuing criminal enterprise statute, the jury was required to unanimously agree which three federal drug offenses the defendant committed, the Court so held as a matter of statutory interpretation, not constitutional law. The Court referred to the constitutional implications only as a means

to bolster its interpretation of the statute, noting that the contrary reading approached constitutional limits. The Court stated, "We have no reason to believe that Congress intended to come close to, or to test, those constitutional limits when it wrote this statute." *Richardson*, 526 U.S. at 820. Thus, the Court did not decide whether jury unanimity was constitutionally required.

Moreover, the Court observed that states seemed to reach a contrary conclusion when interpreting state laws regarding repeated sexual assault of a child. *Id.* at 821-22. In distinguishing those cases, the Court stated, "The cases are not federal but state, where this Court has not held that the Constitution imposes a jury unanimity requirement." *Id.* at 821 (citing *Johnson v. Louisiana*, 406 U.S. 356, 366 (1972) (Powell, J., concurring). Because the United States Supreme Court in *Richardson* never held that jury unanimity is required under federal law, Lowe has failed to show that the court's instructions were contrary to or an unreasonable application of clearly established federal law.

**Jury Instructions**

Lowe also argues that the jury instructions "created an inaccurate statement of the law or at the very least misled the jurors." (ECF No. 3 at 27.) The court of appeals held that "Lowe waived his ability to object to the jury instructions by failing to object at the jury instruction conference." *Lowe*, 2013 WI App 128, ¶ 49 (citing Wis. Stat. § 805.13(3)).

In its response to Lowe's petition, the respondent argues that Lowe procedurally defaulted this claim both by failing to fairly present it in his petition for review to the Wisconsin Supreme Court and because the state court rejected it on state procedural grounds independent of the federal question. (ECF No. 14 at 28-29.) Lowe does not address this claim, including the government's response to it, in his reply. (ECF No. 16.) Therefore, the court regards Lowe as having conceded that he procedurally defaulted this claim.

In any event, the court finds that Lowe failed to fairly present this claim to the Wisconsin Supreme Court. The only reference to the jury instruction issue in Lowe's petition for review is under the heading "Issues Presented For Review" where he states: "V. Whether the jury instructions misinformed the jury, further violating Lowe's constitutional right to a fair trial?" (ECF No. 10-6 at 9.) Although every other issue presented for review corresponds with a section of Lowe's argument, there is no corresponding argument regarding the jury instructions.

"To preserve a claim for federal collateral review, the petitioner must 'fairly present' it to all levels of the state judiciary. That means, among other things, articulating the point in such a way that a judge could grasp both its substance and its foundation in federal law." *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006). "[T]his requirement is not met if a judge must go outside the four corners of the document in

order to understand the contention's nature and basis." *Id.* (citing *Baldwin v. Reese*, 541 U.S. 27 (2004)).

In the absence of any argument in Lowe's petition for review explaining why the jury instructions misinformed the jury, the Wisconsin Supreme Court would not have understood the nature or basis for his claim. Consequently, it was not fairly presented to the Wisconsin Supreme Court and was therefore procedurally defaulted.

## Conclusion

Having concluded Lowe is not entitled to relief on any claim presented in his petition, **IT IS THEREFORE RECOMMENDED** that Lowe's petition for a writ of habeas corpus be **denied**.

**IT IS FURTHER RECOMMENDED** that the court deny Lowe a certificate of appealability, the petitioner having failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) whereby written objections to any order herein or part thereof may be filed within fourteen days of service of this order. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 11th day of June, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge