UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAMEN R. LOWE,

        Petitioner,

    v.                                  Case No. 15-cv-425-pp

MARC CLEMENTS,

        Respondent.

## ORDER ADOPTING JUDGE DUFFIN'S RECOMMENDATION (DKT. NO. 18), OVERRULING OBJECTIONS (DKT. NO. 19), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND DISMISSING PETITION

## I.    Background

### A.    Procedural History

On April 10, 2015, the petitioner filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254. Dkt. No. 1 at 1. He raised five grounds for relief: (1) the trial court violated his constitutional right to cross-examine witnesses against him and present a complete defense; (2) his trial counsel was ineffective; (3) the State failed to disclose exculpatory evidence; (4) Wis. Stat. §948.025 violated his right to jury unanimity; and (5) the trial court's jury instructions misled the jury. Id. at 6-9. On May 12, 2015, this court screened the petition and allowed the petitioner to proceed on all five grounds. Dkt. No. 7. The case was fully briefed on December 17, 2015 but due to the court's heavy caseload, the case sat for quite some time. It was eventually referred to Magistrate Judge Duffin for review. Dkt. No. 17. On June 11, 2018, Judge Duffin issued a report, recommending that this court dismiss the petition and deny the petitioner a

1

certificate of appealability. Dkt. No. 18. The petitioner has objected. Dkt. No. 19.

B.  Facts

Judge Duffin summarized the relevant facts in his report, and while the petitioner's objection states that he "reiterates the Statement of Facts from his Brief in Support of Petition and Reply Brief," dkt. no. 19, he does not specifically object to Judge Duffin's factual recitation. The court recounts Judge Duffin's statement of facts below:

> Damen Lowe, then both a Racine police officer and school security officer, physically and sexually assaulted his adopted daughter, V.A.L. Lowe was very strict with V.A.L. He restricted her cell phone and social media usage and allowed her to socialize with only certain boys. Lowe was able to keep close tabs on V.A.L. because he worked as a security guard at his daughter's high school.
>
> In April of 2009 Lowe learned his daughter was failing history and that she had been using a classmate's cell phone to send text messages. Lowe took his daughter out of class, brought her to the teachers' lounge, forced her to the ground, handcuffed her, and demanded to know who she had been texting. She refused to tell him. Lowe then escorted V.A.L. out of the teacher's lounge, through the school, and out to his car in order to take her home, keeping her handcuffed the whole time and threatening to punch her in the face if she continued to ask that he loosen the handcuffs. Later that evening, at home, V.A.L. reported that Lowe struck her twice on her leg with an open hand and hit her with a belt on her arm and thigh.
>
> V.A.L. made plans to run away, and the following day told a friend that Lowe had been sexually abusing her. V.A.L. called Child Protective Services (CPS) and reported physical, but not sexual, abuse. That same day she also spoke with detectives and again did not report sexual abuse. It was not until days later that V.A.L. reported to CPS that Lowe had been sexually assaulting her.
>
> According to V.A.L., the sexual abuse began with Lowe showing her pornography when she was in fifth grade. Lowe began having sexual contact with V.A.L. when she was in

2

sixth grade. Lowe would require her to engage in sexual acts in exchange for privileges. This included, for example, instances where she wanted to go out with friends, permission to get her tongue pierced, and one instance where Lowe had V.A.L. masturbate him in exchange for letting her listen to a CD in the car.

Lowe was arrested on May 4, 2009 and charged with repeated sexual assault of a child, incest, four counts of exposing a child to harmful material, and one count of child abuse. Shortly after V.A.L. first made her allegations against Lowe, her mother informed her that Lowe was not actually her biological father; Lowe had adopted V.A.L. Lowe proceeded to trial, where his defense was that V.A.L. fabricated the sexual abuse as a means to escape Lowe's strict supervision and discipline. Following a six-day jury trial, Lowe was found guilty. He was acquitted of three additional charges of child abuse.

Dkt. No. 18 at 1-3 (internal citations omitted).

The petitioner appealed his conviction. Dkt. No. 1-1 at 6. He raised the same five issues in the direct appeal that he raises in this petition. Id. The Court of Appeals thoroughly analyzed each issue, concluded that the petitioner had waived his challenge to the jury instructions and ruled against him on the other issues. The petitioner sought review from the Wisconsin Supreme Court. Dkt. No. 10-6. While the petition listed all five issues, id. at 8-9, it presented no argument regarding the appellate court's ruling that the petitioner had waived the jury instruction issue. The Wisconsin Supreme Court denied the petition for review. Dkt. No. 1-2.

C.    Judge Duffin's Recommendation

The Wisconsin Court of Appeals issued a twenty-six-page decision affirming the petitioner's conviction. Given that, Judge Duffin's job at the federal *habeas* stage was to determine whether the Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law, or whether the decision was based on an unreasonable determination of

the facts given the evidence before the trial court. Dkt. No. 18 at 3-4 (citing Miller v. Smith, 765 F.3d 754, 759-60 (7th Cir. 2014); 28 U.S.C. §§2254(d)(1), (2)).

1.    *Denial of right to cross-examine/present a defense*

Judge Duffin explained that the petitioner's defense theory was that, to escape the petitioner's strict parenting techniques, his daughter had lied about the petitioner having sexually abused her. Dkt. No. 18 at 4. The petitioner had asked the trial court to admit, or to allow cross-examination about, printouts from V.A.L.'s MySpace page and police reports indicating that V.A.L.'s mother had called the police about V.A.L. Id. While the trial court admitted other evidence of V.A.L.'s misbehavior, the conflicts between V.A.L. and the petitioner, and the activities V.A.L. engaged in after the petitioner's arrest of which the petitioner disapproved, it did not allow the petitioner to introduce posts and photos showing some specific instances of those activities. Id. at 4-5. The court also excluded evidence of phone calls V.A.L.'s mother had made to the police after the petitioner's arrest, complaining of problems she was having with her daughter. Id. at 5.

The Wisconsin Court of Appeals found that the trial court had given the petitioner "'broad leeway' regarding evidence about events prior to the allegations." Dkt. No. 1-1 at 4. It explained that the trial court allowed the defense to cross-examine V.A.L. "at length" about things that happened before she made the sexual assault allegations: "about engaging in activities of which [the petitioner] did not approve and about her refusal to follow [the petitioner's] rules." Id. V.A.L. had testified about texting boys without her father's approval, hanging around with boys who drank and used drugs and had criminal records, having a boy over without her father's permission, leaving the house to

see a boy while her father was working, using MySpace after her father told her to stop and more. Id. at 4-5. The Court of Appeals explained that while the trial court had excluded the MySpace posts and police reports from *after* V.A.L. alleged that the petitioner assaulted her, it also had allowed cross-examination about V.A.L.'s post-allegation use of the MySpace account and other activities of which her father did not approve, "but limited the cross-examination to prohibit questioning about her drug and alcohol use and sexual activity." Id. at 5-6. The trial court allowed the defense to question V.A.L. about the following post-allegation activity: resuming the use of MySpace in a way that V.A.L.'s father had prohibited, and behaving in ways and having contact with people that V.A.L.'s father disapproved of. Id. at 6.

The Wisconsin Court of Appeals explained that while the Constitution grants a criminal defendant the right to effectively cross-examine witnesses and present favorable testimony, those rights were not absolute. Id. at 7 (citing Davis v. Alaska, 415 U.S. 308, 318 (1974) (right to cross-examination); Chambers v. Mississippi, 410 U.S. 284, 302 (1973) (right to admit favorable testimony); State v. Pulizzano, 155 Wis.2d 633, 645 (Wis. 1990) (rights not absolute). The evidence a defendant presents still must be more probative than prejudicial. Id. (citing State v. McCall, 202 Wis.2d 29, 42 (Wis. 1996)). The court explained that it had reviewed the trial court's evidentiary rulings for an erroneous exercise of discretion, citing State v. Rhodes, 336 Wis.2d 64, 75 (Wis. 2011), and noted that even when a defendant makes a constitutional challenge to an evidentiary ruling, trial judges retain broad discretion "to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the

witness' safety, or interrogation that is repetitive or only marginally relevant," citing <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986). <u>Id.</u> at 8.

After reviewing the relevant case law, the Court of Appeals concluded that the defendant was able to "fully explore V.A.L.'s pre-allegation behavior, including intense conflict with [the petitioner]." <u>Id.</u> at 11. It listed the information defense counsel had been able to elicit at trial, and concluded that "counsel was able to lay ample foundation for the theory that, at the time of the allegations, V.A.L. was in the habit of breaking [the petitioner's] rules and arguably had reason to want to get out from under [the petitioner's] control." <u>Id.</u> The appeals court also reiterated that the trial court had not prohibited all cross-examination about post-allegation conduct. <u>Id.</u>

The appellate court also concluded that the trial court had not abused its discretion in weighing the probative versus prejudicial impact of the post-allegation evidence. <u>Id.</u> at 12. The appellate court agreed that because the defendant had proved that V.A.L. did things post-allegation of which the petitioner did not approve, the specifics of how she did those things would have been cumulative, and could have confused the jury. <u>Id.</u> Regarding the trial court's concerns that the excluded material constituted an improper attack on V.A.L.'s character, the court of appeals concluded that the trial court had properly weighed the evidence in that regard, and had not erred. <u>Id.</u> at 14-15.

The court of appeals came to the same conclusion regarding the trial court's decision not to allow the defense to use the MySpace pages or post-allegation police contacts to impeach V.A.L.'s mother. <u>Id.</u> at 16. The appellate court explained the ways in which the trial court had properly exercised its discretion. <u>Id.</u> at 16-17. The court found that one of the petitioner's appellate arguments—that the excluded evidence would have revealed that V.A.L. might

have lied on the stand to avoid being charged with things like breaking curfew or underage drinking—had not been raised at the trial level, and thus was waived on appeal. Id. at 17-18.

The court of appeals concluded that even if it had found that the trial court abused its discretion in excluding the evidence, such error would have been harmless, because the excluded evidence was cumulative and defense counsel had been able to elicit plenty of evidence to support the defense theory. Id. at 18-19.

The petitioner asserts that the exclusion of this evidence violated his rights to cross-examine witnesses and to present a defense, allowing V.A.L. and her mother to testify "falsely under the protections of the court's ruling." Id. at 6 (quoting petitioner's brief, Dkt. No. 3 at 10). The petitioner wanted to be able to ask his daughter why she had been able to run away, break curfew, cause disturbances and drink without being arrested or cited, and to ask why the police were called five times about this behavior without any referral to juvenile authorities. Id. The petition says that it was important for the petitioner to be able to raise these issues, because it would have allowed him to rebut the testimony of his daughter and her mother that V.A.L. was just being a typical teen, and was not acting out. Id.

Judge Duffin observed that the Wisconsin Court of Appeals had considered these arguments on direct appeal, and he walked through the salient portions of the court's decision. Dkt. No. 18 at 5-6. Judge Duffin, like the court of appeals, recounted the applicable federal law governing the Sixth Amendment right to cross-examination and to present relevant testimony. Id. at 7-8. He agreed that the most relevant evidence of V.A.L.'s motive to fabricate was the evidence of the conflicts between her and the petitioner occurring *prior*

to her allegations of sexual assault, and observed that there was nothing in the record to show that the trial court had limited the scope of cross-examination on that topic. <u>Id.</u> The court of appeals concluded that the trial court had excluded the some of the post-allegation evidence because it was irrelevant and was an attempt to "trash" V.A.L., but noted that the trial court had allowed the petitioner to question V.A.L. about her use post-allegation use of the MySpace account, her behavior and her associations. <u>Id.</u> at 5-6. Judge Duffin concluded that the court of appeals' conclusions did not constitute an unreasonable application of federal law. Dkt. No. 18 at 8. He accepted the petitioner's argument that post-allegation conduct might have had some relevance to V.A.L.'s motive to continue to accuse the petitioner, and to testify at his trial. <u>Id.</u> at 9. But he concluded that that relevance was "marginal at best," noting that the petitioner himself had testified that after the incident at the school, he'd told V.A.L. to go live with her mother, and she'd refused. <u>Id.</u> Judge Duffin noted that if V.A.L. had been so desperate to get away from her father, she could have followed his order that night and left; she did not need to fabricate "a long history of sexual assaults." <u>Id.</u> at 9-10. He noted that the only thing the trial court had kept from the jury about the post-allegations MySpace posts "were the details of what specifically was posted on her MySpace page." <u>Id.</u> at 10. He agreed with the court of appeals that the excluded evidence carried a significant risk of confusing the issues (from whether V.A.L.'s allegations of sexual assault were credible to whether she was a "bad" teenager) and misleading the jury (as to whether V.A.L. did what she claimed on MySpace that she had done, or was going to do). <u>Id.</u> Finally, he found it reasonable that the trial court excluded the details of the post-allegation behavior that had caused V.A.L.'s mother to call the police. <u>Id.</u> He agreed that the police reports,

and the allegations in them, "ran an undue risk of painting V.A.L. as a promiscuous and delinquent teenager, improperly implying that she should not be believed because of her character." Id. He also added that in his view, the police reports undermined the petitioner's argument that V.A.L. lied because she wanted to live with her mother, who gave her more freedom; the police reports showed that V.A.L. was not free to do whatever she wanted at her mother's house. Id. at 11.

For all these reasons, Judge Duffin concluded that the petitioner had not shown that the Wisconsin Court of Appeals' decision was contrary to or involved an unreasonable application of clearly-established federal law. Id.

### 2. *Ineffective assistance of counsel claims*

Judge Duffin found that the petitioner had asserted four bases for his ineffective of counsel claim: (1) that his attorney failed to comply with discovery demands, which "played in indirect role in the court's decision to limit the admissibility of the MySpace and other documents at trial," id. at 11 (citing Dkt. No. 3 at 15); (2) that his attorney failed to timely prepare and file a brief in support of the argument that the trial court should have admitted those documents," id. (citing Dkt. No. 3 at 17); (3) that his attorney failed to obtain the petitioner's ex-wife's phone records for use at trial, id. (citing Dkt. No. 3 at 18); and (4) that his attorney should have called the petitioner's live-in girlfriend to testify on his behalf, id. at 11-12 (citing Dkt. No. 3 at 19).

The Court of Appeals started with the standard articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), in which it held that the defendant must demonstrate both prejudice and deficient performance; to demonstrate deficient performance, the defendant must "show specific acts or omissions of counsel that are 'outside the wide

range of professionally competent assistance.'" Dkt. No. 1-1 at 19. (citing Strickland, 466 U.S. at 687). The court observed that it owed great deference to trial counsel's decisions, stating that "the defendant must overcome a strong presumption that trial counsel's performance was reasonable." Id. (citing State v. Trawitzki, 244 Wis.2d 523 (Wis. 2001)). To show prejudice, the defendant must demonstrate that his trial counsel's errors were "so serious as to deprive the defendant of a fair trial and a reliable outcome." Id. (citing Strickland, 466 U.S. at 687).

The petitioner had first argued that although the state filed a discovery demand for any evidence the petitioner planned to introduce at trial, his counsel did not turn over the MySpace pages or the police reports. Id. at 20. The state then filed a motion *in limine*, asking the trial court to exclude any evidence the defense had not disclosed. Id. At the trial, counsel attempted to introduce the MySpace pages "to impeach V.A.L. and [her mother]," as well as the "police call log records showing that [V.A.L.'s] mother had called the police on V.A.L. several times." Id.

The court of appeals concluded that counsel's failure to turn these documents over prior to trial did not constitute deficient performance. As to the MySpace pages, trial counsel indicated that he did not want to turn over the pages earlier "because he did not want to 'stop the flow of information.'" Id. The court of appeals found this reasonable, and also noted that because the trial court had explained that the failure to produce the documents pre-trial was not the reason for excluding them, the petitioner could not show prejudice. Id. As to the call records, the court similarly concluded that it was not trial counsel's failure to turn the records over that caused the trial court to exclude them, so there was no prejudice. Id.

While the petitioner's lawyer did prepare a brief arguing for the admission of these materials, it appears that he filed it at "4:12 p.m. on the Friday before Memorial Day weekend when trial was set to start on the following Tuesday." Id. at 19. The trial court held a hearing under State v. Machner, 92 Wis. 2d 797 (Ct. App. 1979), and indicated that the fact that the brief was filed at the eleventh hour did not influence the court's evidentiary rulings.[1] Id. at 21. On appeal, the petitioner argued only that "the failure to comply with the court's procedural orders 'affected [his] Compulsory Process rights.'" Id. The court of appeals concluded that this was not enough to show ineffective assistance.

The petitioner argued that his trial lawyer should have obtained V.A.L.'s mother's phone records; he asserted that the records would have supported "the defense theory surrounding the events leading up to V.A.L.'s decision to report [the petitioner] for abuse," and that the records "would have confirmed witnesses' testimony that V.A.L. found out that [the petitioner] was not her biological father over the weekend following her initial report of physical abuse." Id. at 21-22. The court of appeals noted, however, that phone records would show only when telephone calls took place, not their content. Id. at 22. It concluded that "a list of which numbers were called when" had "minimal probative value," and thus that counsel's failure to obtain those records and try to present them at trial was not deficient performance and did not prejudice the defense. Id. The court also noted that the petitioner did not call V.A.L.'s mother to testify at the post-conviction hearing; without that, the petitioner could not show that the mother's testimony at trial, or the outcome of the trial,

---

[1] Machner requires that when a defendant challenges trial counsel's conduct, there must be a hearing at which that trial counsel is present. Machner, 92 Wis.2d at 804. Such hearings are referred to as Machner hearings.

would have been different if counsel had cross-examined her with the phone records. Id.

Finally, the petitioner's trial lawyer indicated that he had decided not to call the petitioner's live-in girlfriend because she had attended the school where the petitioner worked as a security officer, he'd started dating her shortly after she left the school, and she was young, pretty and resembled the victim. Id. Trial counsel felt that in a case in which the petitioner was charged with sexually assaulting his teenaged daughter, it would not be wise to call as a witness the petitioner's girlfriend when she resembled that daughter in appearance and age. Id. The court found this a "reasonable decision" and concluded that it did not demonstrate deficient performance.

In finding that the court of appeals' rulings on ineffective assistance were not contrary to, and did not involve an unreasonable application of, clearly established federal law, Judge Duffin first pointed out that the petitioner has yet to demonstrate that counsel's failure to turn over the MySpace pages and phone records prior to trial affected the trial court's decision to exclude those documents. Dkt. No. 18 at 13. Judge Duffin indicated that the petitioner had provided him with no more detail regarding his argument about the late-filed brief than he had provided the court of appeals; he concluded that if the petitioner was trying to assert that if counsel had filed the brief sooner, the documents would have been admitted, the argument was defeated by the trial court's statements that it had excluded the evidence for other reasons. Id. at 14. Judge Duffin agreed with the court of appeals that the petitioner's ex-wife's phone records had "minimal probative value," and found the court's conclusions in that regard to be a reasonable application of the Strickland standard. Id. Finally, Judge Duffin found trial counsel's decision not to call the

petitioner's live-in girlfriend to be reasonable, noting that "[the girlfriend] was 14 years younger than [the petitioner] and, in the opinion of [the petitioner's] trial counsel, 'bore . . . a striking resemblance to [V.A.L.],' so much so that counsel misidentified the two in photographs." Id. at 15 (citing Dkt. No. 10-17 at 72-73). Judge Duffin found that "counsel reasonably concluded that calling [the girlfriend] to testify would have arguably supported the state's case by highlighting and corroborating [the petitioner's] alleged sexual interest in high school age girls." Id.

    3.    *Brady* claim

Next, Judge Duffin summarized the petitioner's argument that the state had violated Brady v. Maryland, 373 U.S. 83 (1963) as follows:

> [The petitioner] contends that "[t]he State did not tell the defense about V.A.L.'s unsubstantiated claim that she previously called the police to report her father's abuse and [the petitioner] intercepted the police and turned them away." ([Dkt.] No. 3 at 23-24.) The state acknowledged learning of V.A.L.'s claim in the week before trial, investigating it, but not finding any information corroborating it. ([DKT.] No. 10-11 at 104.) At trial, the state asserted "It's not exculpatory in nature . . . by any means, and it isn't something that is in the sole possession of the State. The Defendant was . . . the witness will testify the Defendant was there." ([Dkt.] No. 10-11 at 105.)
>
> [The petitioner] alleges that the fact that the state was unable to find a police report corroborating V.A.L.'s allegation was exculpatory. According to [the petitioner], the absence of a corroborating police report demonstrates that V.A.L.'s statement that she previously called the police to report her father's abuse was false. He contends that V.A.L.'s fabrication of this evidence "makes it more likely that she fabricated the sexual assault allegations." ([Dkt.] No. 3 at 24.)

Dkt. No. 18 at 16-17.

The court of appeals began by explaining how the issue had come up: during V.A.L.'s direct testimony at trial, the prosecutor had asked her why she

had not told anyone about an occasion when the petitioner had hit her. Dkt. No. 1-1 at 24. The petitioner's attorney objected because he thought V.A.L. was "going to testify about a prior call to the police regarding [the petitioner's] abuse, and trial counsel had not been given pretrial notice about this testimony." Id. The judge then asked the prosecutor whether there was any corroboration of the police call; the state responded that there was not. The trial court sustained the petitioner's objection to the line of questioning, because there was no corroboration of the incident. Id.

Against that background, the court of appeals noted that the trial court had *sustained* the petitioner's objection to the line of questioning. Id. It found that the remedy for violating Brady was exactly that—exclusion—and it concluded that the petitioner's Brady argument was moot. Id. at 24-25. It also observed that evidence V.A.L. had called the police to report the petitioner's abuse, and that they had come to the house but that the petitioner had turned them away, was "hardly exculpatory." Id. at 25. As to the petitioner's theory that the evidence could have been exculpatory if he could have used the absence of corroboration to argue that V.A.L. lied about the call ever happening, the court of appeals pointed out that it was the petitioner himself who'd objected to the admission of any testimony about the alleged incident. Id. The court also explained that the petitioner had not taken any steps, post-conviction, to determine whether the call had or had not taken place. Id.

Before Judge Duffin, the petitioner argued that because the state had not been able to find a police report corroborating V.A.L.'s allegation, she lied when she made that allegation, which made it more likely that she lied about the petitioner having sexually assaulted her. Dkt. No. 18 at 17. Judge Duffin agreed with the petitioner that the disclosure of this information in the middle

of V.A.L.'s direct examination was "last-minute," but he pointed out—as had the court of appeals—that the petitioner still could have used the information to make exactly the attack he made on appeal and in this petition. Id. Rather than trying to exclude V.A.L.'s testimony that she called the police and the petitioner turned them away, the petitioner could have let her testify to that effect, then cross-examined her about whether there was any proof that the events actually happened. Id. Rather than doing that, the petitioner chose to seek exclusion of the allegations, and the trial court gave him what he asked for. Id. at 17-18.

Judge Duffin also found reasonable the appellate court's opinion that testimony about the alleged event would not have been exculpatory, and agreed that the petitioner did not produce any post-conviction evidence that there was no evidence anywhere to support V.A.L.'s claim. Id. at 18. Without that, Judge Duffin found, the petitioner could not show that the state's failure to turn over information about V.A.L.'s allegations was material to his defense. Id.

4. *Claim that Wis. Stat. § 948.025 violates unanimity requirement*

The petition alleges that Wis. Stat. §948.025 violates "jury unanimity provisions by stating the jury does not need to agree on the individual acts that comprise the three sexual assaults or if a particular violation was a sexual assault under § 948.02(1) or (2)." Dkt. No. 1 at 24-25.

Section 948.025 is a "repeater" statute; it imposes enhanced penalties on defendants convicted of multiple acts of sexual assault. Section 948.025(1)(c) provides that if a defendant commits three or more violations of the first- or second-degree sexual assault statutes (Wis. Stat. §§ 948.02(1) and (2), respectively) of the same child within a specific time period, the defendant is guilty of a Class C felony. Section 948.025(2)(e) says that if that repeater

charge is tried to a jury, "in order to find the defendant guilty the members of the jury must unanimously agree that at least 3 violations of [first-degree or second-degree sexual assault] occurred within the specified period of time but need not agree on which acts constitute the requisite number."

The court of appeals disposed of the petitioner's argument that the statute is unconstitutional by explaining that the Wisconsin Supreme Court already had rejected that argument. Dkt. No. 1-1 at 25. The court explained that in State v. Johnson, 243 Wis. 2d 365 (Wis. 2001), the Supreme Court "squarely addressed and rejected this same challenge to § 948.025." Id. The court quoted Johnson: "[W]hile jury unanimity is required on the essential elements of the offense, when the statute in question establishes different modes or means by which the offense may be committed, unanimity is generally not required on the alternate modes or means of communication." Id. (quoting Johnson, 243 Wis. 2d at 372-73.

In federal court, the petitioner asked the court to adopt the reasoning of the dissent in Johnson. Dkt. No. 18 at 19. He asked Judge Duffin to conclude that the statute did not comport with the fairness requirements of the Due Process clause. Id. The petitioner cited Richardson v. United States, 526 U.S. 813, 820 (1999) in support of his argument. Id. at 20.

Judge Duffin first noted that the petitioner's jury did not have to decide whether the predicate acts of sexual assault constituted first-degree sexual assault under Wis. Stat. §948.02(1) or second-degree sexual assault under §948.02(2); the trial court instructed them only on the elements of second-degree sexual assault. Id. So "the only issue before [Judge Duffin was] whether it is contrary to clearly established federal law to not require the jury to be unanimous as to which three violations of Wis. Stat. § 948.02(2) formed the

basis for conviction under Wis. Stat. § 948.025(1)(e)." <u>Id.</u> Judge Duffin disagreed that <u>Richardson</u> supported the petitioner's theory, noting that the <u>Richardson</u> case involved a different statute, and that the Supreme Court had based its finding—that the jury had to be unanimous as to which three federal drug offenses a defendant had committed to find a defendant guilty of a continuing criminal enterprise—on the specific language of that statute. <u>Id.</u> at 20-21. He found that the <u>Richardson</u> Court did not hold that the Constitution requires jury unanimity for state statutes regarding repeated offenses of child sexual assault. <u>Id.</u> at 21.

5. *Jury instruction claim*

Judge Duffin rejected the petitioner's argument that the jury instructions "created an inaccurate statement of the law or at the very least misled the jurors[.]" <u>Id.</u> (quoting Dkt. No. 3 at 27). Judge Duffin observed, as did the court of appeals, that in the post-conviction proceedings, the petitioner had waived his ability to contest jury instructions when he failed to object to them at the jury instruction conference. <u>Id.</u> Further, Judge Duffin remarked that the petitioner never fairly presented his jury instructions argument to the Wisconsin Supreme Court—his petition for review in that court contained no corresponding argument—and that he had procedurally defaulted on that claim. <u>Id.</u> at 22-23 (citing <u>Lockheart v. Hulick</u>, 443 F.3d 927, 929 (7th Cir. 2006)).

6. *Certificate of Appealability*

Finally, Judge Duffin recommended that this court "deny [the petitioner] a certificate of appealability, the petitioner having failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. §2253(c)(2)." <u>Id.</u> at 23.

D. Petitioner's Objection

The petitioner asks this court to "conduct a *de novo* review to determine whether to grant his petition for Writ of Habeas Corpus or whether to grant a certificate(s) of appealability." Dkt. No. 19 at 1. He says that he "relies upon his previous briefings and pleadings in asking this court to reject the Magistrate Judge's recommendations regarding his basis for the Petition for Writ of Habeas Corpus." Id.

After this blanket objection, the petitioner specifically objects to Judge Duffin's recommendation that this court decline to issue a certificate of appealability. The petitioner points out that in Buck v. Davis, ___ U.S. ___, 137 S.Ct. 759 (2017), the Supreme Court held that a court should issue a certificate of appealability if reasonable jurists could disagree with the court's resolution of a petitioner's constitutional claims, or could conclude that the petitioner's issues are worthy of proceeding further. Dkt. No. 19 at 2. He argues that reasonable jurists could disagree on four of his five claims—whether he was denied the right to present a defense, whether he was denied ineffective assistance of counsel, whether the state violated Brady and whether Wis. Stat. §948.025 violated his right to jury unanimity. Id. at 3. He asks the court to grant his petition, or "[i]f nothing else," to grant him a certificate of appealability on those four issues.

## II. Discussion

### A. Standard of Review

The Federal Rules of Civil Procedure apply in *habeas* cases. Rule 12, Rules Governing Section 2254 Cases in the United States District Court. Rule 72(b)(1) allows a district court to refer a case to magistrate judge, who then "conduct[s] the required proceedings," and "enter[s] a recommended

disposition." Fed. R. Civ. P. 72(b)(1). A dissatisfied party has fourteen days from the date the magistrate judge issues the recommendation to file "*specific* written objections." Fed. R. Civ. P. 72(b)(2) (emphasis added); see also 28 U.S.C. §636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which an objection is made"). The petitioner must specify "each issue for which review is sought," but need not specify "the factual or legal basis of the objection." Johnson v. Zema Sys. Corp., 170 F.3d 734, 741 (7th Cir. 1999). The district court is required to conduct a *de novo* review "only of those portions of the magistrate judge's disposition to which specific written objection is made." Id. at 739. "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." Id. (citations omitted). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." Weeks. v. Samsung Heavy Indus. Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997).

The federal *habeas* statute, 28 U.S.C. § 2254, provides that a court "shall not" grant a *habeas* petition on any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§2254(d)(1) and (2); Harrington v. Richter, 562 U.S. 86, 97-98 (2011).

B.     General Objection

The petitioner asks the court to conduct a *de novo* review "to determine whether to grant his Petition for Writ of Habeas Corpus," "relies upon his previous briefings and pleadings in asking this court to reject the Magistrate Judge's recommendations regarding his basis for the Petition for Writ of Habeas Corpus," reiterates the facts from his petition and reply, and concludes by asking the court to "grant his Petition for the reasons previously detailed in his pleadings and briefs." Dkt. No. 19 at 1, 7. Specifically regarding his claim that Judge Duffin should have recommended that this court grant a certificate of appealability as to his challenge to the jury instructions, the petitioner includes a footnote saying that he "relies on his previous arguments regarding the challenge to the jury instructions." Id. at 7 n.1.

Neither 28 U.S.C. §636 nor the Federal Rules of Civil Procedure require a district court to conduct a *de novo* review of a magistrate judge's recommendation based on a blanket objection to the entire recommendation. At least two judges in this district have concluded that such a general objection does not give rise to the district court's obligation to conduct a *de novo* review. United States v. Molinaro, 683 F.Supp. 205, 211 (E.D. Wis. Mar. 14, 1988) ("Without specific reference to portions of the Magistrate's decision and legal discussion on the objected portion, the district court's duty to make a *de novo* determination does not arise. The general statements that a party 'objects' and 'incorporates all arguments previously made to the magistrate' will not suffice."); see also United States v. Hogan, Case No. 11-CR-130, 2013 WL 265230, at *1 (E.D. Wis. Jan. 18, 2013). The court will not conduct a *de novo* review of Judge Duffin's entire recommendation.

Reviewing those portions of the recommendation to which the petitioner did not specifically object under the clear error standard, this court is not left with the "definite and firm conviction that a mistake has been made." Weeks, 126 F.3d at 943. The court whole-heartedly agrees with Judge Duffin that the court of appeals' rulings neither were contrary to or involved an unreasonable application of clearly established federal law nor resulted from unreasonable determinations of the facts based on what was presented to the trial court.

Regarding the argument that the petitioner was denied his right to cross-examine or to present a defense: the petitioner *did* present evidence supporting his theory that V.A.L. made up the sexual assault allegations to get out from under the petitioner's strict thumb. The petitioner *did* present evidence that V.A.L. was, for lack of a better word, a "difficult" teenager. He *did* present evidence that she had a motive to get the petitioner in trouble. The fact that the trial court limited the amount of post-allegation evidence the petitioner could present was—as the court of appeals found—harmless error, if any, and the court of appeals' decision in that regard was not constitutionally defective.

As to the petitioner's arguments that his counsel was ineffective, none of his arguments supports that conclusion. The failure to turn over evidence pretrial did not impact the court's decision to exclude that evidence, so the petitioner cannot show prejudice. The same is true for the timing of the brief. Like the other courts, this court is unclear on how failure to obtain and present records of phone numbers called by the victim's mother was prejudicial to the petitioner's case. And not only does the court conclude that counsel's decision not to call the petitioner's live-in girlfriend was not deficient, it suspects that if counsel *had* called the girlfriend, some might have considered *that* to constitute ineffective assistance of counsel.

21

The state's failure to disclose to the petitioner pre-trial the fact that the victim alleged that she had called the police to report the petitioner's abuse, but that the petitioner had intercepted the police when they responded, did not violate <u>Brady</u>. The evidence, by itself, was *inculpatory*, not *exculpatory*, which likely is why trial counsel objected. The petitioner appears to argue, however, that the state should have notified him pre-trial that it had not been able to verify V.A.L.'s allegations. He says that if he could have used the fact that the state had not been able to corroborate the allegations to argue that V.A.L. lied about them, he might have been able to argue that V.A.L. probably lied about the sexual assault allegations. This string of possibilities does not prove a <u>Brady</u> violation—the petitioner has not shown that V.A.L. did lie (as Judge Duffin noted, there is no evidence that the state checked every possible source of corroborating information, such as dispatch records, in its attempts to corroborate the allegations, and the issue came up during V.A.L.'s examination on the witness stand), he has not shown that the fact that she lied was suppressed, and he has not shown that even if the jurors had known that V.A.L. lied about calling the police and the petitioner turning them away, it would have had an impact on the verdict.

Regarding the petitioner's challenge to the constitutionality of Wis. Stat. §948.025, the petitioner asks this federal court to overturn a Wisconsin Supreme Court decision dating back eighteen years. He first asked the court of appeals for that relief—relief that the court of appeals, which is bound by the Wisconsin Supreme Court's decisions, could not grant. He asked Judge Duffin for this relief based on the United States Supreme Court's interpretation of a *federal* statute that is structured differently from Wis. Stat. §948.25. In his objection to Judge Duffin's recommendation that this court decline to issue a

certificate of appealability, he argues that this court should look to <u>Schad v. Arizona</u>, 501 U.S. 624 (1991) in determining whether reasonable jurists could differ as to "whether Wisconsin's statute violates the Due Process demands of fundamental fairness and rationality." Dkt. No. 19 at 7. Aside from the fact that this court does not decide clear error by determining whether reasonable jurists could differ, the Court in <u>Schad</u> *declined* to hold unconstitutional jury instructions that "did not require agreement on whether the defendant was guilty of premeditated murder or felony murder." <u>Schad</u>, 501 U.S. at 627. In reaching that decision, the Court noted that it was "not free to substitute [its] own interpretations of state statutes for those of a State's courts." <u>Id.</u> at 636. This court is no more free to do so than the Supreme Court.

Finally, Judge Duffin did not commit clear error in finding—as did the court of appeals—that the petitioner has waived his jury instruction argument by failing to raise it at the jury instruction conference or to argue it in his petition for review to the Wisconsin Supreme Court.

None of Judge Duffin's recommendations on any of these issues constituted clear error.

C.     <u>Certificate of Appealability</u>

The petitioner specifically objected only to Judge Duffin's recommendation that this court decline to issue a certificate of appealability. In that context, the petitioner asserts that reasonable jurists could disagree about four of the five issues he raised in the petition, and points to specific areas within each issue where he thinks there could be disagreement. The objection repeatedly asserts that "reasonable jurists could disagree" about some of Judge Duffin's specific conclusions. It asserts that reasonable jurists could disagree with Judge Duffin's conclusion that the post-arrest evidence regarding the

MySpace page was marginally relevant, or was confusing or misleading. Dkt. No. 19 at 4. It asserts that reasonable jurists could disagree about whether V.A.L.'s mother's testimony that she approved of the MySpace posts, or that V.A.L. was a normal teen, "opened the door" to the admission of the excluded evidence. <u>Id.</u> at 5. It asserts that reasonable jurists could disagree about whether trial counsel's alleged errors demonstrated "a lack of diligence." <u>Id.</u> It asserts that reasonable jurists could disagree about the late disclosure of V.A.L.'s unsubstantiated claim that she'd called the police violated the state's obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). And it asserts that reasonable jurists could disagree whether Wis. Stat. §948.025 violates due process and fundamental fairness. <u>Id.</u> at 7.

The structure of the petitioner's objection ignores the court of appeals' thorough adjudication of all the claims the objection identifies. Given that, no district court—no "reasonable jurist"—could grant *habeas* relief on those claims unless the court of appeals' decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The issue is not whether reasonable jurists could disagree that the post-arrest MySpace pages were of marginal relevance. The issue is whether reasonable jurists could disagree that the Wisconsin Court of Appeals' conclusions that (a) trial counsel was able to explore V.A.L.'s behavior before the petitioner was arrested (in other words, evidence of her motive to lie about the sexual assaults), (b) the exclusion was proper to guard against jury confusion and the introduction of cumulative evidence, (c) the trial court properly limited cross-examination of V.A.L.'s

24

mother, and (d) any error on the trial court's part was harmless, were contrary to federal law or based on an unreasonable determination of the facts given the evidence presented at trial. The question is not whether reasonable jurists could differ that the petitioner's trial counsel was not ineffective, or that the state did not violate <u>Brady</u>, or that the petitioner's constitutional challenge to Wis. Stat. §948.25 was resolved by <u>Johnson</u>. It is whether reasonable jurists could disagree that the Wisconsin Court of Appeals' conclusions were contrary to federal law or based on an unreasonable determination of the facts given the evidence presented at trial.

Conducting a *de novo* review of these issues, the court finds that reasonable jurists could not disagree regarding whether the Wisconsin Court of Appeals' rulings on these issues were contrary to federal law or were based on an unreasonable determination of the facts. This court declines to issue a certificate of appealability.[2]

## III. CONCLUSION

The court **OVERRULES** the petitioner's objections. Dkt. No. 19.

The court **ADOPTS** Judge Duffin's recommendation. Dkt. No. 18.

The court **ORDERS** that the petition is **DISMISSED**.

The court **DECLINES** to issue a certificate of appealability.

Dated in Milwaukee, Wisconsin this 19th day of March, 2019.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**

---

[2] While the petitioner cannot appeal this court's decision not to issue a certificate of appealability, he does have the ability to seek such a petition from the Seventh Circuit. Rule 11(a), Rules Governing section 2254 Cases in the United States District Courts.